(4 Misc. Rep. 172.)

BRADLEY FERTILIZER CO. v. SOUTH PUB. CO.

(Common Pleas of New York City and County, General Term. June 5, 1893.)

1. REVIEW ON APPEAL—MOTION FOR NEW TRIAL.
    Where defendant's motion for a new trial is denied, but no order is entered on the motion, and the appeal is merely from the judgment, only defendant's exceptions can be reviewed.

2. CORPORATION DE FACTO—WHAT CONSTITUTES.
    C., operating as the "S. Publishing Co.," at a time when no such company had been incorporated, bought goods of plaintiff, who made no inquiry as to who composed the company, and to whom no representations were made as to its incorporation. C. acted as manager, and held himself out as such, but not as president, and he made use of a seal in the conduct of business. Some time after the purchase from plaintiff, C. and some of his employes were incorporated as the "S. Publishing Co.," but plaintiff had no dealings with such corporation, and neither the goods sold by plaintiff nor the proceeds thereof came into its possession. *Held*, that plaintiff could not recover for the goods from the corporation.

Appeal from city court, general term.

Action by the Bradley Fertilizer Company against the South Publishing Company. From a judgment of the general term of the city court (21 N. Y. Supp. 472) affirming a judgment of the trial term in favor of plaintiff, entered on the verdict of a jury, defendant appeals. Reversed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Herbert H. Gibbs, for appellant.

George Walton Green, for respondent.

BOOKSTAVER, J. The action was brought to recover a balance of $309.60, alleged to be due for goods sold and delivered to defendant between February, 1885, and May, 1887. There have been two trials of the issues. The first resulted in a judgment by direction of the court in favor of the plaintiff, but upon an appeal to this court the judgment was reversed, and a new trial ordered. At the second trial the jury found a verdict for the plaintiff, and the general term of that court affirmed the judgment thereon, and hence this appeal.

After the coming in of the verdict the defendant moved for a new trial on the usual grounds, and the motion was denied. No order on this motion was entered, and the appeal is from the judgment only. Therefore nothing can be reviewed upon this appeal but the defendant's exceptions. Boos v. Insurance Co., 64 N. Y. 242; Del Genovese v. Mayor, etc., 14 N. Y. St. Rep. 197; Zoller v. Grant, (Super. N. Y.) 3 N. Y. Supp. 539; Railroad Co. v. Ebling, 100 N. Y. 98, 2 N. E. Rep. 878; Jones v. Sparks, 1 N. Y. St. Rep. 476; Dixon v. Dixon, 12 N. Y. St. Rep. 505. At the close of plain-

tiff's case, counsel for defendant moved to dismiss the complaint, on the grounds, among others, (1) that the plaintiff had wholly failed to prove that defendant was a corporation in fact or in law at the time mentioned in the complaint; (2) that the plaintiff had failed to prove legal incorporation at the time mentioned in the complaint; (3) that there was no proof that the defendant received any of the goods or merchandise mentioned in the complaint or in the exhibits put in evidence; and (4) that there was no allegation that the defendant assumed or promised to pay the alleged indebtedness, by whomsoever incurred; and at the close of the whole case renewed the motion on these grounds, and on the further grounds, among others, that it had been clearly proved that the defendant was incorporated under the laws of the state of Florida in January, 1888, and did not exist in law prior to that time; also that the defendant could be held liable only for its own acts done after it had a legal existence, and that the defendant never received any of the merchandise in question, or any profit or advantage therefrom, and that it never assumed the payment of the debt in question. These motions were denied on each of the grounds, and defendant duly excepted thereto. It also by its counsel excepted to the submission of the question of whether or not it was a de facto corporation at the time the debt was incurred to the jury. These exceptions raise the questions to be considered upon this appeal, and the one principally contested is whether or not the plaintiff had on the last trial offered any evidence from which a jury could infer the existence of a de facto corporation at the time the indebtedness was incurred. When this case was before us upon the former appeal, (17 N. Y. Supp. 587,) the learned judge delivering the opinion of the court said:

"A de facto corporation is constituted by a user of corporate franchises, and by acts in the nature of corporate proceedings under color of organization, (Childs v. Smith, 55 Barb. 56;) or where proceedings have been taken in professed compliance with some law authorizing the formation of a corporation, and there are acts of subsequent user, (Church v. Pickett, 19 N. Y. 482;) or where there is a user of corporate franchises under color of an act authorizing the incorporation, (Bank of Toledo v. International Bank, 21 N. Y. 542.)"

The power of creating corporations is one appertaining to sovereignty, and is exercised by that branch of the government in which it is constitutionally invested. Formerly the right to corporate existence was always by a special charter or act of incorporation, but the power of special legislation of this kind is now restricted or abolished in nearly all of the states, and corporations are usually formed by persons complying with the general laws of the state on this subject. A corporation must have a full and complete organization and existence as an entity, and in accordance with the law to which it owes its origin, before it can assume its franchises, or enter into any kind of contract, or transact any business. 4 Amer. & Eng. Enc. Law, 197, and authorities there cited. When it has fully complied with the law under which it is organized it is a corporation de jure, but where the persons

desiring to form such a corporation have made the attempt to comply with the law, and have failed in some essential matter, and afterwards have done business under such defective organization, then it is known as a corporation de facto. But it will be observed in cases of de facto corporations there must have been at least an attempt made to organize under some law. If no such attempt has been made, and yet parties assume to act as if there had, the concern is not even a de facto corporation, but a sham and a fraud, and all the parties connected with it will be held liable as copartners, and not as members of a corporation. Thus it will be seen that two things are necessary to be shown in order to establish the existence of a corporation de facto: First, the existence of a charter or some law under which a corporation with the powers assumed might lawfully be created; second, a user by the party to the action of the rights claimed to be conferred by such charter or law. Authorities above cited; and Paper Co. v. O'Dougherty, 65 N. Y. 571; De Witt v. Hastings, 69 N. Y. 518; Finnegan v. Knights, etc., (Minn.) 53 N. W. Rep. 1150; Demarest v. Flack, 11 N. Y. Supp. 83. In the case under consideration there is not a scintilla of evidence that there was any attempt at organization under the laws of any state until the certificate of incorporation was filed on January 6, 1888, long after all the transactions for which a recovery is sought in this action had taken place. Nor was there any attempt made to show any preliminary agreement to form such a corporation before the 6th of January, 1888. On the other hand, the evidence is clear and uncontradicted that prior to 1872–73 one Price and another owned and published a paper known as "The South" under the name of "The South Publishing Co." About the year last mentioned Mr. Clough purchased "The South" and the name "The South Publishing Co." of Price, who had previously purchased his partner's interest. From that time to the time of the incorporation of the company Mr. Clough owned and managed the business individually, and as the sole owner thereof, and all persons in any way connected with the business were employed and paid by him, and no one else had any voice in the management of the affairs of the concern. He continued the use of the name which he had purchased, with the good will, etc., but made no representations as to any incorporation of the company, as far as we have been able to see from the evidence. The contract for advertising out of which this action arises was made by him individually in December, 1884, under the style of the "South Publishing Company." No one else at that time had any interest in the business. Plaintiff does not claim that at that time it made any inquiry as to who composed the South Publishing Company, or that in making the contract it relied upon the incorporation of the company, or that any representations were made as to its incorporation. The plaintiff did not even show that Mr. Clough, or any one else, held the concern out to the public or to the plaintiff as a corporation, although its counsel so argued on this appeal. The fundamental error into which he seems to have

fallen is in confounding the words "company" and "corporation." He frequently used them as synonymous; but while the word "company" is frequently used to denote an incorporated association, it does not necessarily involve that idea, either in common speech or at law.    Imp. Dict. sub. "Company," says:    "The word is applicable to private partnerships or to incorporated bodies; but when there are only a few individuals associated the concern is generally called a copartnery, the term 'company' being usually reserved for large associations;" while it defines a "corporation" as "a body politic or corporate, formed and authorized by law" to act as a single person.    Bouv. Law Dict. defines "company" as "an association of a number of individuals for the purpose of carrying on a legitimate business," and then proceeds:    "This term is not synonymous with 'partnership,' though every such unincorporated company is a partnership.    *    *    *    When these companies are authorized by the government, they are known by the name of 'corporations.'"    We all know how frequently, especially in late years, the word "company" has been used by private enterprises which are no more than copartnerships; so the use of the style "The South Publishing Co." did not hold out the concern as a corporation, nor, as far as the evidence shows, was any one led to deal with it as such.    Nor we do think that the testimony of Mr. Crosby, a former employe of the concern, warrants respondent's counsel in claiming as he does that there were any acts in the nature of corporate proceedings under color of organization by the South Publishing Company prior to January, 1888.    In the first place, there was no attempt at an incorporation under any law shown, and Mr. Crosby's testimony is far from showing any facts which would warrant such an inference; nor does his testimony show that there was any concerted action of any kind, under color of organization or otherwise, whereby Mr. Clough was appointed president or general manager of the concern.    That he was manager, and gave himself out as such, is true enough, but that was because he was owner of the business, and not because he was elected or appointed thereto by any one other than himself.    Besides, Mr. Crosby, in his deposition, is extremely careful not at any time to swear that Mr. Clough was president of any corporation.    He always couples the word "president" with "or manager."    The fact that another employe was the publisher of the paper amounts to nothing as proof of an incorporation; nor does the other fact, testified to by Crosby, that another employe was editor, aid the contention. Such offices are not necessary or common officers in corporations. Nor, in our judgment, is it of the least consequence, as affecting the question of a de facto corporation, that these employes were afterwards, through Mr. Clough, made stockholders of the corporation when formed.    Nothing is more natural than to do this with tried and trusted employes when a private business is to be converted into a private corporation.

The only other ground on which respondent claims that the defendant was a corporation de facto prior to January, 1888, is that

in the conduct of the business a seal was used, and that Mr. Clough assumed to act as the general manager and president, and sent out letters in the corporate name, and that goods were purchased in the name of the "South Publishing Co." But here again it is met by the fact that there is not the shadow of proof of any attempt at actual incorporation. The fact of a seal being used in the business is no proof of this. Seals are often used by private enterprises not incorporated, even by individuals, to authenticate the articles made by them, or for mere convenience. As before shown, the contention that Mr. Clough acted as president at any time is not sustained by the evidence. That he acted as manager we have before commented on. All of the foregoing facts, taken together, and most strongly against the defendant, amount only to mere representations that there was an existing corporation when none existed in fact or law. This might bind the parties making the representation as copartners, and make them liable for the debt, but could not bind the present corporation, which was not formed until long afterwards. Thus the case discloses that there was no attempt at organization, no use of corporate franchises, and nothing in the nature of corporate proceedings prior to the actual incorporation in 1888; and these facts, taken in connection with the incorporation in 1888, for which there is no conceivable motive except the honest desire to form an incorporated company out of a private concern, leave no possible ground for the contention that there was a de facto corporation before that time. Nor can this be inferred simply because the defendant refused to produce its books, from which the plaintiff proposed to show a record of corporate proceedings during the time prior to its actual incorporation. It was not shown that any such books were in the possession of defendant, nor was any attempt made to show that there was a record of such proceedings prior to 1888. On the other hand, we think it clear that there were no such proceedings. Under such circumstances, general repute cannot make a corporation de facto of what was clearly no corporation.

The cases cited by respondent in support of his contention are not applicable to a case like the present, where it affirmatively appears not only that the company was incorporated long after the cause of action arose, and that before it was conducted as a private enterprise, although the word "company" was used. There are many cases which held that, where a company has a de facto existence, it will be estopped from denying its existence as between itself and those with whom it has had dealings; but none of them are applicable to this case. There is an entire failure of proof that there were any dealings with the incorporated defendant, or that the goods in question, or any part of the proceeds thereof, ever came into the possession of the defendant, or that it received any benefit therefrom, or that it at any time or in any manner undertook to pay this obligation. On the other hand, the testimony is uncontradicted that the arrangement was made with Mr. Clough, and that these goods came into his possession, and that the pro-

ceeds went into his bank account, and were used exclusively by him, and that none of it ever went to the defendant. The sending by the plaintiff to the defendant of the bill of October 12, 1889, was not an account stated between the parties, and the trial court erred in allowing the amendment in respect thereto. The question of an account stated was before us on the former appeal, and the evidence is not in any way varied upon this, and what was then said we regard as a complete answer to that contention. We therefore think that the court erred in refusing to dismiss the complaint, and that, as this case has been tried twice, and twice appealed to this court, and there was an utter failure of proof to support plaintiff's contention, the judgments of the general and trial terms of the city court should be reversed, and the complaint dismissed, under Fuller v. Kemp, (N. Y. App.) 33 N. E. Rep. 1084, mem., with costs in the court below and on the appeals to this court to the appellant. All concur.