School District v. Wallace.

SCHOOL DISTRICT OF THE VILLAGE OF AGENCY, Respondent, v. JAMES E. WALLACE et al., Appellants.

Kansas City Court of Appeals, May 2, 1898.

1. Pleading: AMENDMENT: PARTY: CHANGE OF NAME: WAIVER BY APPEARANCE. The substitution of a new party plaintiff is a change in the cause of action and therefore not proper, but in this case the amendment of the plaintiff's name by changing from "Agency Village School District No. 3" to "School District of the Inhabitants of the Village of Agency" is not the substitution of a new party and does not change the cause of action, and beside defendants waived such objection by appearing and proceeding to trial after the amendment.

2. Schools: FORMATION OF A NEW DISTRICT: ORGANIZATION: ELECTION. A new school district may be formed of the consolidation of two or more entire districts but it does not thereby become a village school district but to complete such organization two things are requisite, the fixing of the bounds and the election of the directors.

3. ————: NEW DISTRICT: ORGANIZATION: ELECTION: STATUTE. The provision of section 7977, Revised Statutes 1889, requiring the voters in a newly formed district within fifteen days to meet and organize is mandatory and after expiration of such time they have no power to organize the district and their proceedings are nugatory.

4. ————: VILLAGE DISTRICT: ORGANIZATION. Only an organized—and not an unorganized—common school district can be organized into a village school district.

5. ————: ————: ————: DIRECT AND COLLATERAL ATTACK. A newly formed district failing to elect its directors within the time prescribed by statute has no such organization as to authorize it to form itself subsequently into a village district, and when, in an action brought by such district, its corporate existence is denied under oath it must prove such existence.

6. ————: ————: ————: DE FACTO: DE JURE. In the absence of *de jure* organization of a school district, a *de facto* existence can only be shown by actual user, but in this case the facts are insufficient to show such user.

ON MOTION FOR REHEARING.

7. ————: FORMATION V. ORGANIZATION: STATUTE. The difference is pointed out between formation and organization of a school district as required by the provisions of section 7977, Revised Statutes 1889.

*Appeal from the Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

REVERSED.

VORIES & VORIES and B. R. VINEYARD for appellants.

(1) A single common school district, having a village within its boundaries, may organize into a village school district. There is no law, however, for two adjoining common school districts to jointly organize into a single village school district at the annual school meeting. R. S. 1889, sec. 8083. (2) The action at the annual meetings of these two districts at most could only operate as a consolidation of two districts into what might be properly called unorganized territory. There is no provision of law for organizing at the annual meeting two common school districts into a village district, where, on that day, they may have become consolidated into a single district. (3) Section 7977 of Revised Statutes of this state provides that whenever two common school districts shall have been consolidated, as provided in the preceding sections, "it shall be the duty of the voters, resident of the territory embraced within the limits of the newly created district, to assemble at some central point within fifteen days after the formation thereof," pursuant to a notice provided

for in the section, which assembly, when thus convened, is invested with the powers of the annual meeting, among which is that of organizing. The requirements of the statutes must be followed in order to make organization effective. State ex rel. v. Lockett, 54 Mo. App. 207; Orrick v. Dorton, 125 Mo. 443, 444. (4) Furthermore, at the meeting of September 12, 1896, the board of directors simply organized as a board, by electing a president and clerk. There was no action of the board as such looking to the formation of a village school district. In the absence of this corporate act ordering the election, all proceedings thereafter were nugatory. State ex rel. v. Lockett, 54 Mo. App. 206, 208. (5) Suit was brought in this case in a name unknown to the law. Section 8083 provides the name by which all village school districts shall be known and in which they shall sue and be sued. The change of name permitted by the court over defendants' objection and exceptions saved was not an amendment, but the substitution of a name known to the law, for one not known, and in favor of which no cause of action did or could exist. This is not permissible. State v. Rattakin, 34 Ark. 144; Davis v. New York, 14 N. Y. 506, 527; Miles v. Strong, 60 Conn. 393.

STERLING P. REYNOLDS and HALL & WOODSON for respondent.

(1) The amendment of the petition by changing the name of the plaintiff was properly allowed by the court. R. S., sec. 2098; 1 Ency. of Plead. & Prac. 535–537; R. R. v. Town of Boswell, 36 S. E. Rep. 1103; Lilly v. Tobbein 103 Mo. 477; Beattie v. Hill, 60 Mo. 72; Ward v. Pine, 50 Mo. 38; Tayon v. Ladew, 33 Mo. 205; Harkness, Adm'r, v. Julian, 53 Mo.

238; State ex rel. v. Shelby, 75 Mo. 482; Heber v. Hannibal, 83 Mo. 262. (2) The defendants waived any objection to the amendment by appealing to the merits. Ward v. Pine, 50 Mo. 38; Sauter v. Leveridge, 103 Mo. 615–621; Scovill v. Glasner, 79 Mo. 449; Silver v. R. R., 21 Mo. App. 5; Fuggle v. Hobbs, 42 Mo. 537; Spurlock v. R. R., 104 Mo. 658; Ragan v. R. R., 111 Mo. 456–460; Hurley v. R. R., 57 Mo. App. 675; State ex rel. v. Gage Bros. Co., 52 Mo. App. 464; Hubbard v. Quisenberry, 32 Mo. App. 459. (3) The plaintiff was at least a *de facto* corporation. The question of the validity of its incorporation could not be raised collaterally in this proceeding; that question can be raised only in a proceeding of ouster on behalf of the state. City of Billings v. Dunnaway, 54 Mo. App. 1; State v. Fuller, 96 Mo. 166; Inhabitants of Fredericktown v. Fox, 84 Mo. 65; 21 Am. and Eng. Ency. of Law, 783 and 790; School Dist. v. School Dist., 26 Pac. Rep. 43; School Directors v. School Directors, 28 N. E. Rep. 49; State v. Whitney, 59 N. W. Rep. 884; Troutman v. McCloskey, 27 S. W. Rep. 173; Garden v. Christian, 24 N. Y. Sup. 339; Color v. Dwight School Dist., 55 N. W. Rep. 587; R. R. v. Dunn, 61 Ill. App. 227; Shapleigh v. Hugelo, 17 Sup. Ct. Rep. 957; Osborne v. Oakland, 68 N. W. Rep. 506; Coast Co. v. Mayor, 36 Atl. Rep. 21; Eustis v. Henrietta, 37 S. W. Rep. 632; McCreary v. Comanche, 34 S. W. Rep. 679. (4) The existence of the new consolidated district dates from the meetings whereat it was substituted for the old districts. No other action was necessary to give life to the new district. The new district was formed before the meeting provided by section 7977, Revised Statutes 1889, for electing a board of directors and organizing the same. State ex rel. v. Eden, 54 Mo. App. 31. (5) The provision of section 7977, making it the duty of the voters resident

in the newly created district to meet therein within fifteen days after the formation thereof, is not mandatory, but is merely directory. Co. Ct. v. Spark, 10 Mo. 119; 23 Am. and Eng. Ency. of Law, 458; Sutherland on Statutory Constr., secs. 446–449. (6) The failure to elect a board of directors and to organize the same within fifteen days after the formation of the new consolidated district did not have the effect to dissolve that district. School Directors v. School Directors, 28 N. E. Rep. 49. The existence of a municipal corporation does not depend upon the existence of officers. Such a corporation is not dissolved by the failure to elect officers. 1 Beach on Pub. Corp., sec. 468, and authorities cited; 1 Dill. on Mun. Corp. [4 Ed.], sec. 166, and authorities cited. (7) The failure on the part of the newly created district to elect its officers within fifteen days did not have the effect to render the territory embraced within its limits unorganized territory. Unorganized territory within the meaning of section 7970, Revised Statutes 1889, is territory which has not previously been organized for school purposes. Perryman v. Bethune, 89 Mo. 158; R. S. 1889, sec. 7971.

SMITH, P. J.—This is a proceeding in equity which was instituted in the name of "Agency Village School District No. 3, township forty-six, range thirty-four, Buchanan county, Missouri," for the purpose of enjoining the defendants from "in any way interfering with the plaintiff's management of its school property, or drawing or otherwise obtaining or interfering with any public money belonging to it." At the trial the plaintiff, over the objections of the defendants, was granted leave to amend its petition as to its name, by changing it so as to read: "School District of the

VOL. 75 app—21

Inhabitants of the Village of Agency." It is contended that this amendment changed substantially the plaintiff's cause of action and was, therefore, forbidden by the statute. R. S. 1889, sec. 2098. It has been ruled in this state that the change of party plaintiff by substitution of a new plaintiff is a change of the cause of action and, therefore, not proper. Clements v. Greenwell, 40 Mo. App. 589; Courtney v. Sheehy, 38 Mo. App. 290. But we are not inclined to think the change in the name of the plaintiff, as already stated, was in effect the substitution of a new plaintiff. Such an amendment we think permissible under the statute, but were it otherwise we are of the opinion that the defendant can not now be heard to complain of such amendment, for the reason that instead of standing on his objection thereto he proceeded to trial on the issues presented by the amendment and thereby waived the same. Myer Bros. v. Ins. Co., 73 Mo. App. 166; Mancuso v. Kansas City, 74 Mo. App. 178; Davis v. Boyce, (decided by St. Louis Court of Appeals at present term); Ward v. Pine, 50 Mo. 38; Scovill v. Glasner, 79 Mo. 449; Sauter v. Leveridge, 103 Mo. 615. If the amendment filed stated an entirely new and different cause of action the defendant voluntarily appeared thereto and proceeded to trial on the issues it presented. The court under the law had jurisdiction of the action without reference to the original petition, and the appearance of the defendants thereto and the proceeding to trial gave it the requisite jurisdiction of the parties. Wilkerson v. Sampson, 56 Mo. App. 276; Pearson v. Gillett, 55 Mo. App. 312; Welsh v. R'y, 55 Mo. App. 599

PLEADING: amendment: party: change of name: waiver by appearance.

It must be conceded that under the statute, section 7972, a new school district may be formed by the consolidation of two or more entire districts. And it

must likewise be conceded that when a new district is so formed that it does not thereby become a village school district. In the present case it is disclosed by the evidence that the qualified voters of each school district addressed a proper petition to their respective district clerks praying for the submission at the annual meeting of a proposition to consolidate the two districts and "to organize the same into a village school district, under the laws governing the same." The notices posted were in substance that at the annual school meeting to be held on the seventh day of April, 1896, the proposition stated in the petition already referred to would be proposed and considered. At the annual meeting in each of the districts the proposition for consolidation so submitted was carried by a majority vote. The purpose of the consolidation as expressed in the petition and notices was mere surplusage and could have no effect. The giving of the assent of the voters of the two districts to the consolidation *ipso facto* accomplished the disorganization of those districts and besides this it was the taking of one step in the direction of the organization of the new district. It made it possible to organize a new district out of the territory of the two. Its effect was as to the new district the same as where such preliminary steps are taken under section 7970 to organize a district out of unorganized territory, and which results in a meeting of the qualified voters therein, at which meeting a plat defining the boundaries thereof is approved. If at such meeting the qualified voters stop at the point of approving the plat of the boundaries of the district; or if they adjourn without electing directors, no one would contend that such district had been organized.

Two essential steps must be taken in order to effect the organization of a school district. One of

SCHOOLS: formation of a new district: organization: election.

these is the approval of the plat defining the boundaries; the other the election of directors—one is as essential as the other. The result of the

*——: new district: organization: election: statute.* vote of the two districts, as has already been indicated, had the effect to form the new district; that is to say, to define and fix its boundaries. R. S., sec. 7977. It remained for the resident voters of the new district to meet as required by the provisions of section 7977 and elect directors. That section made it the duty of the voters therein *within fifteen days after the formation thereof* to assemble in pursuance of the notice therein specified at some central point within said district designated in the notice and when assembled, it is declared by the same section, they "shall be invested with the same powers and be conducted as prescribed for the first annual district meeting held under the provisions of this chapter." The qualified voters of the new district, for the purposes of exercising the powers of qualified voters of school districts at the annual meetings, as provided by section 7979, Revised Statutes, did not meet until the twelfth day of September, 1896. And consequently there was no meeting within the time required by section 7977, from which we have just quoted.

That the organization of the new district was not completed within the time required by statute is an undisputable fact. The question thus arising is whether or not the qualified voters of the new district could effect the completion of the organization of such district by assembling after the time had elapsed in which the statute made it their duty to assemble. This question for its solution depends upon whether the said statutory requirement as to time, is directory or mandatory. If the requirement is directory they could; but if mandatory could not.

"It is the duty of courts of justice," said Lord Campbell in Bank v. Turner, 3 L. I. Ch. 380, "to try to get at the real intention of the legislature by carefully attending to the whole scope of the statute to be construed, * * * as far as any rule is concerned you can safely go no further than that. In each case you must look to the subject-matter, consider the importance of the provision and the relation of that provision to the general object intended to be secured by the act and upon a review of the case in that respect decide whether the enactment is what is called imperative or directory." "It is a rule of construction," says Judge Scott in St. Louis v. Sparks, 10 Mo. loc. cit. 83, "that a statute specifying a term within which a public officer is to perform an official act regarding the rights and duties of others, is directory merely, unless the nature of the act to be performed, or the phraseology of the statute is such, that the designation of time must be considered as a limitation of the power of the officer." But we do not think this rule applicable in a case like the present. In Mechem on Public Officers, section 178, it is stated that enactments *declaring the time* at which an election shall be held are deemed to be matters of substance and must be substantially observed or the election will be void. And it has been held that a failure to hold an election at all until several days after the time fixed by law will invalidate the election. Dickey v. Hurlburt, 5 Col. 343; Melvin's case, 68 Pa. 333. "Time and place," says Beach on Public Corporations, section 384, "are of the substance of every election and the statutory provisions by which they are definitely fixed are mandatory and must be obeyed." See, also, McCreary on Elections [3 Ed.], sec. 141.

Now looking to the provisions of said section 7977 and other sections *in pari materia* and it will be seen

that the requirement as to the time within which the voters of the new district should meet to perform the duty enjoined on them by that section is mandatory. It is only by meeting within the time specified in the section that the meeting becomes vested with the powers of the annual district meeting. There is nothing in the language of the section to justify the inference that a meeting held at any other time would be invested with such power. The necessity for the observance of the requirement will further appear from a consideration of the following sections, namely: 7979 providing that estimates shall be made between April 30 and May 15; 8000 providing for estimates of funds before May 15; 8009 providing for commencement of the school year on July 1; 8064 providing for apportionment of state funds in July; 8067 providing for assessment by county clerk on estimates; and 8069 requiring report by county clerk before July 31.

It is therefore plain that in order to entitle the new district to the benefits and advantages conferred by the various provisions of the school law it is absolutely necessary that the meeting required by said section 7977 be held within the time therein prescribed. Our conclusion, therefore, is that the said statutory requirement was intended by the legislature to be imperative. It inevitably follows from these observations that the qualified voters of the new district who met after the lapse of the time in which they were required by the statute to meet were not invested with the powers of an annual district meeting as provided by section 7978, Revised Statutes. When they met they were invested with no statutory power and their proceedings were nugatory. They were powerless to then complete the organization of the district. Though they met and elected directors the new district remained unorganized.

The next question presented is whether the qualified voters of the new district, having failed to complete the organization of such district, could organize into a village school district. Section 8083, Revised Statutes, provides that "any village, the plat of which has been previously filed in the recorder's office of the county, may, with the territory which is or may be attached thereto, be organized into a single school district." And the next section, 8084, provides that whenever it may be desired to organize a common school district into a village school district that the directors, shall, upon the reception of a petition to that effect signed by ten qualified voters who are resident tax payers of the district, order an election to be held for that purpose. It is therefore plain to be seen from these statutory provisions that an unorganized common school district can not be organized into a village school district. It is only an organized common school district that has a village therein, the plat of which village has been filed as provided in said section 8083, that can be organized into a village school district. There is no authority anywhere to be found for the organization of an unorganized common school district into a village district.

It appears from the agreed statement of the facts of this case that the qualified voters of the new district, after they had neglected to meet within the time required by statute to complete the organization of such new district, did meet and elect directors, and that subsequently these directors, on the petition of the resident taxpayers of the district, ordered a special election to be held in said district where the majority vote cast was in favor of organizing into a village school district. This action

*—: village district: organization.*

*—: —: —: direct and collateral attack.*

of the voters of the district was without legal effect. The new district never having been organized as a common school district the qualified voters therein were without power when they assembled either to perfect the organization of such new district or to organize it into a village district, so that the new district was never organized either as the one or the other. The organization of the new district was a condition precedent to the organization of that district into a village school district. This step, which the statute made necessary to effect the latter organization, was never taken. How then can it be said that the plaintiff is a duly incorporated and organized village school district? If it was necessary for the plaintiff to prove that it was a corporation, as seems was the case (School District v. Dorton, 125 Mo. 439; Hopkins v. R'y, 79 Mo. 98; R'y v. Shambaugh, 106 Mo. 566), it did not do so.

As the allegation of the petition that it was ''duly organized as a village school district and that it was duly incorporated and organized as such'' was put in issue by the answer, and the plaintiff's corporate existence was denied by the affidavit of the defendants, the burden was thereby cast on plaintiff to prove its corporate existence. White v. I. O. O. F., 30 Mo. App. 682; Edmonston v. Henry, 45 Mo. App. 346. The issue of the plaintiff's corporate existence was therefore directly and not collaterally raised. Our conclusion must be that the plaintiff is not a duly organized and incorporated village school district.

The plaintiff's further contention is that if it has no existence as a corporation *de jure* that it is a corporation *de facto*. It was declared in Fredericktown v. Fox, 84 Mo. 59, and in other cases cited in plaintiff's brief, that in proceedings where the question whether a

School District v. Wallace.

—:—:—:
de facto: de
jure.

corporation exists arises collaterally, the courts will not permit its corporate capacity to be questioned if it appear to be acting under color of law and recognized by the state as such. Such questions must be raised by the state itself in some direct proceeding. But it is apprehended that this rule can have no application to cases like the present where the plaintiff's corporate existence is put in issue by a plea of *nul tiel record*, and where its right to sue is made to depend upon the establishment of that fact. It is true, as has been seen, there is a general statute in this state authorizing the organization of such corporations as that which plaintiff alleges itself to be. This may be regarded as the charter under which it claims to exist. But because there is shown to be a general statute in force which would authorize its existence, this showing is not *per se* sufficient to establish its *de facto* existence. Something more is required. In order to establish a corporation *de facto* it is necessary to show user of the corporate franchise by an association of persons under the charter or law. Thompson on Corporations, sec. 1851. There must be actual user by the corporation of its franchise in order to cure the defect in its organization. DeWitt v. Hastings, 69 N. Y. 518. No reason is perceived why this rule is not applicable to a village school district, a *quasi* corporation.

In the present case the record discloses no exercise by the plaintiff of the powers conferred by statute, on village school districts, unless the order of the board of directors directing this suit to be brought is such an exercise, which we do not think is the case, but if so we do not deem it sufficient within the meaning of the rule just referred to. It is our conclusion that the plaintiff has not shown itself to be an organized and incorporated village school district, either *de*

*jure* or *de facto* and therefore it is without right to maintain this suit.

There are other questions discussed in the very able briefs of counsel which it becomes, in the view of the case just expressed by us, unnecessary to consider.

The decree of the circuit court which was for the plaintiff will be reversed. All concur.

### ON MOTION FOR REHEARING.

SMITH P. J.—The plaintiff suggests that in the consideration of the case we overlooked section 7972, Revised Statutes, which provides that: "If the assent to such change be given by all the annual meetings of the various districts thus voting * * * the district or districts * * * shall be deemed formed * * * from that date;" but in this it is in error as will be seen by reference to that part of the opinion in which it is said that: "It must be conceded that under the statute— section 7972, Revised Statutes—a new school district may be formed by the consolidation of two or more entire districts."

It seems to us that the plaintiff has failed to properly distinguish between the territorial formation of a school district out of two or more entire districts and the subsequent organization thereof. A school district may be territorially formed but it can have no organized corporate existence until the resident voters thereof shall meet and take the action required by section 7977, Revised Statutes. To be "formed" is one thing, and to be "organized" into a corporate entity is another. It will be seen from a reading of the several sections of the statute, referred to in the opinion, that the above terms are not therein used interchangeably; that they have a different meaning and its signification must be obvious.

—: formation v. organization: statute.

The plaintiff is, as we think, in error in supposing that the opinion is in any respect in conflict with that of State ex rel. Moore v. Eden, 54 Mo. App. 31. That was a proceeding by *quo warranto*. The question was whether or not certain proceedings for the division of a certain school district into two new districts was valid, and whether or not the persons exercising the office of school directors in each of said districts so formed were rightfully holding the same. It appears that the two new districts were properly formed out of a single district, in the manner required by the statute, and that the resident voters in each of such new districts, within fifteen days after the formation thereof, held their first meeting and elected directors and exercised the powers of qualified voters of school districts at annual meetings, as authorized by section 7979, Revised Statutes; that schools were conducted and the expenses thereof paid by each district, and that one of said districts issued bonds for building a schoolhouse; that the state and county had recognized such districts; that there was no proof that notices of the first meeting of the new districts had been given as required by section 7977, *ante*. In view of these facts it was held that notwithstanding the irregularity in the manner of giving the said notices that the judgment of the lower court, refusing to interfere, would not be disturbed. The case seemingly declares that where two new school districts are formed out of a single district and are subsequently organized, their corporate existence dates back to the meetings which disorganized the one and "formed" the others. Whether or not we think this a correct expression of the law it is unnecessary to say, since no such question can arise in the present case. Here there was no preliminary meeting of the resident voters as in that case.

It is true the plaintiff now for the first time insists that the qualified voters did meet in conformity to the

requirements of the section of the statute last cited, but it may be seen by reference to the statement of the case contained in its brief that the meeting referred to was declared by a court of competent jurisdiction to have been *nil* and was subsequently so regarded by both plaintiff and the voters themselves. The case was presented to us by plaintiff on the theory that there had not been in legal contemplation a preliminary meeting of the voters of the new district. It is sufficient to say that there is nothing in the opinion in the case to which we have already averted holding that the act of voters in forming one district out of two, or the reverse, is, of itself, without more, sufficient to accomplish the organization of the *quasi* corporation.

Accordingly the motion will be denied.